Justin D. Harris, #199112
HARRIS LAW FIRM, PC
7110 N. Fresno St., Suite 400
Fresno, California 93720
Telephone (559) 272-5700
Facsimile (559) 554-9989
jdh@harrislawfirm.net

Attorneys for Robert McNutt and Aldona Dement

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT J. MCNUTT, an individual, ALDONA DEMENT, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SANTA ROSA, a public entity, RAINER NAVARRO, in his official capacity as Chief of Police for the CITY OF SANTA ROSA, ESTATE OF MARYLOU ARMER, individually and in her capacity as a detective for the CITY OF SANTA ROSA, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> 1. WRONGFUL ARREST (42 U.S.C. § 1983); <br> 2. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; <br> 3. NEGLIGENCE; <br> 4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Robert McNutt ("**Mr. McNutt**") and Aldona Dement ("**Ms. Dement**") (collectively "**Plaintiffs**") upon information and belief, alleges the following:

**INTRODUCTION**

1. This civil rights action seeks compensatory and punitive damages from Defendants for injuries suffered by Plaintiffs arising out of false accusations which resulted in Plaintiff McNutt having his parole violated and being sent back to prison. The damages suffered by Plaintiffs as a result of these false accusations cannot be understated. They not only subjected Mr. McNutt to physical assault on multiple occasions while in



1

custody, but kept him wrongfully imprisoned while his appeal of the parole violation was pending. Defendants also caused separation from the family and caused Ms. Dement to have her minor, autistic daughter taken from her for three years. This so disrupted the family that it caused loss of income, loss of employment and severe emotional distress among other damages.

## JURISDICTION AND  VENUE

2.    This case arises under 42 U.S.C. § 1983 and California law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. This Court has subject matter jurisdiction over Plaintiffs' pendent or supplemental state law claims under 28 U.S.C. § 1367.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (e) in that (1) the unlawful actions challenged herein occurred in the Northern District; and (2) all of the parties reside in the Northern District.

## PARTIES

4.    Plaintiff Mr. McNutt brings this action in his individual capacity.  At all relevant times, Plaintiff was a resident of the City of Santa Rosa and a citizen of the State of California. Plaintiff timely filed a tort claim with the City of Santa Rosa on January 21, 2021, which the City of Santa Rosa rejected on March 3, 2021. Mr. McNutt served time in prison and was released on lifetime parole in 2016.

5.    Plaintiff Ms. Dement brings this action in her individual capacity. At all relevant times, Plaintiff was a resident of the City of Santa Rosa and a citizen of the State of California. At all relevant times herein, Ms. Dement was married to Mr. McNutt. Ms. Dement is also the mother to a minor, severely autistic daughter ("**Jane Doe**" or "**Jane**") from a separate relationship.

6.    Defendant Estate of Marylou Armer ("**Armer**") was, at all relevant times, a detective with Santa Rosa Police Department. At all relevant times, she was acting under color of law within the course and scope of her duties as a detective with Santa Rosa Police Department, and as an agent and employee of the City of Santa Rosa.


HARRIS LAW FIRM
PC

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

7. Defendant City of Santa Rosa ("**CITY**") is a municipality duly organized under the laws of the State of California. The City of Santa Rosa Police Department ("**SPD**") is a subsidiary of CITY. CITY is responsible for Plaintiffs' injuries under 42 U.S.C. § 1983 because its official policies, practices, and/or customs caused Plaintiffs' injuries. CITY is also responsible for actions of its employees under a *respondeat superior* theory. Liability under California law for all government entities and/or employees is based upon California Government Code §§ 815.2, 820 and/or 845.6, Civil Code § 52.1 and/or Penal Code §§ 149, 240, and/or 242.

8. Plaintiffs are informed and believe and thereon allege that each Defendant is, and at all times mentioned herein was, the agent, employee, representative, successor, and/or assignee of each other Defendant. Each Defendant, in doing the acts, or in omitting to act as alleged in this complaint, was acting within the scope of his or her actual and apparent authority or the alleged acts and omissions of each Defendant as agent subsequently were ratified and adopted by each other Defendant as principal. Plaintiffs are informed and believe that each of the individual Defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

9. In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiffs, justifying an award of punitive damages under Federal and California law against each individual Defendant.

10. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), City is liable for all injuries sustained by Plaintiffs as set forth herein. City bears liability because its policies, practices and/or customs caused Plaintiffs' injuries. In particular, Defendant Chief Navarro has condoned an ongoing pattern of lack of investigation of claims prior to seeking an arrest warrant committed by officers within the City. City and its officials, including Chief Navarro, maintained, permitted and ratified the unconstitutional acts alleged in this complaint.

HARRIS LAW FIRM
PC

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

11.     Mr. McNutt's nightmare began on October 2, 2017. On October 2, 2017, Mr. McNutt reported to the parole office as requested by his parole officer's supervisor. He was led into a room where he was ordered to turn around by a sheriff's deputy and handcuffed, then taken to another room and seated in a chair. Defendant Armer identified herself as a detective with SPD and began questioning Mr. McNutt. Among these, Armer asked if Mr. McNutt knew Jane Doe, which Mr. McNutt identified as his stepdaughter. After additional questioning, Armer informed Mr. McNutt that he was being arrested for violation of Penal Code section 288 with Jane Doe as the alleged victim. Mr. McNutt was thereafter taken to Santa Rosa County Jail.

12.     On October 2, 2017, Armer contacted Ms. Dement and informed her of the PC 288 allegations made against Mr. McNutt and inquired about whether she, Ms. Dement, thought that Mr. McNutt was capable of harming Jane Doe. Ms. Dement denied the allegations.

13.     On October 3, 2017, Mr. McNutt was charged by felony complaint with four counts of committing a lewd act upon the body of a child, in violation of section 288, subdivision (a), on or between August 1 and September 27, 2017.

14.     On October 3, 2017, Armer instructed Ms. Dement that she must take Jane Doe to the hospital to get a SART exam for Jane Doe related to the allegations. On October 4, 2017, Jane Doe underwent a SART exam at Sutter Hospital which resulted in no findings.

15.     On October 4, 2017, the Santa Rosa County District Attorney filed a petition to revoke Mr. McNutt's parole for the same alleged conduct that had resulted in the criminal charges, based on the parole condition that appellant obey all laws.

16.     On October 23, 2017, while Mr. McNutt remained in jail, Jane Doe was removed from Ms. Dement's home by Child Protective Services and placed in foster care. Neither Jane Doe nor Ms. Dement had ever been physically separated before. This was incredibly traumatic and damaging to both Jane Doe and her mother, Ms. Dement. Ms.



HARRIS LAW FIRM
PC

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Dement was provided with no explanation for the removal of her daughter from her home. Given Jane Doe's severe autism, this was especially traumatic and damaging to mother and daughter alike. Ms. Dement suffered severe emotional distress and continues to suffer the aftereffects of that involuntary separation to this day. It took nearly one month before Ms. Dement was even allowed to visit her daughter.

17. Jane Doe was separated required to live apart from her mother, Ms. Dement, for approximately three years with limited visitation.

18. Mr. McNutt remained in county jail from his arrest on October 2, 2017 through the conclusion of his jury trial on March 11, 2019. While incarcerated during that period, Mr. McNutt suffered severe damages for his wrongful detention and imprisonment including, but not limited to, depression, emotional distress, physical assault, and sexual assault as a direct and proximate result of his charges.

19. On March 11, 2019, at the conclusion of a jury trial, the jury found Mr. McNutt not guilty of counts 1 and 4 of the PC 288 criminal complaint against him. The jury was unable to reach a verdict on counts 2 and 3, so the trial court ultimately dismissed those counts at the request of the prosecutor. Mr. McNutt should otherwise have been released following the verdict of not guilty. Such was not the case and he was returned to county jail to await a parole violation hearing.

20. On March 21, 2019, following resolution of the criminal case, the trial court conducted a contested parole violation hearing. On April 11, 2019, despite the prior not guilty jury verdict, the trial court issued a written order after hearing in which it concluded that Mr. McNutt had violated PC 288 and had therefore violated his parole. The court then remanded Mr. McNutt back to prison.

21. Mr. McNutt was sent to prison without proper paperwork. This caused him to be targeted particularly given the PC 288 nature of his wrongful parole violation. Within three or four days of his incarceration, he was brutally attacked by three prisoners causing him physical injuries. In spite of his injuries, Mr. McNutt was not provided an x-ray from



medical and was then sent to isolation aka "the hole" for 10 days purportedly for his own protection.

22. Following his time in "the hole" Mr. McNutt was sent to protective custody for the next six months. During that period, he was given only limited access to the law library.

23. On June 7, 2019, Mr. McNutt filed a notice of appeal regarding his wrongful parole violation.

24. Mr. McNutt was given a parole board date on November 22, 2020, where it was determined that since they had no charges against him for the alleged crime (absent a conviction) or the parole violation, he was suitable to go home. 77 days later, Mr. McNutt was released.

25. Upon release, Mr. McNutt went to Volunteers of America ("**VOA**") in Oakland. He was given a set of stipulations (restrictions) reserved for convicted pedophiles despite the lack of a conviction. Despite these parole stipulations, Mr. McNutt was not required to wear an ankle monitor or to register as a pedophile.

**FIRST CLAIM FOR RELIEF**

Wrongful Arrest (42 U.S.C. § 1983)

Fourth Amendment

(Against all Defendants)

26. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth herein.

27. Defendants alleged to have probable cause to acquire an arrest warrant and arrest Mr. McNutt back on October 2, 2017.

28. In actuality, probable cause did not exist to obtain an arrest warrant and arrest Mr. McNutt, thus violating his rights under the 4th Amendment that protect against unreasonable searches and seizures..

29. Defendants, in their obvious and intentional lack of investigation, failed to properly question witnesses, the parties involved, and other essential family members to



gain a comprehensive understanding of the entire situation before brashly attempting to get a warrant. Defendants relied on witnesses' testimony that was based on observations taken entirely without context or experience of the delicate and involved nature of a paternal relationship with a child suffering from severe autism.

30. Further, the tactics and strategies used to care for and protect a severely autistic child are foreign to the vast majority of people. Specific training and education is required to know how and what to do when caring for a severely autistic child. Uneducated observation of these techniques would leave the observer clueless as to whether care was administered properly, or if it was care that was being administered at all. This complex nature of the interaction between Plaintiff and his stepdaughter clearly shows that an in depth investigation needed to be conducted prior to Plaintiff's constitutional rights being violated. That investigation did not happen.

31. Defendants have a responsibility to thoroughly investigate and corroborate and gain context about claims made by witnesses before running off and obtaining an arrest warrant.

32. Defendants, instead, failed to display any sort of professional responsibility that is inherent with police detective work before taking steps to deprive Plaintiff of his life and liberty. Plaintiff's 4th Amendment right to not be subject to unreasonable seizures was violated as Defendants shirked their responsibilities to investigate prior to obtaining a warrant.

33. Defendant City is also liable for Plaintiff's deprivation of his 4th Amendment rights as their customs, policies, and practices resulted in the violation of Plaintiff's rights.

34. Defendant Armer followed procedures that she was taught and that were instilled in her by City in how to investigate an alleged crime. These procedures allowed Armer to believe that she had sufficiently investigated the situation surrounding Plaintiff and Jane Doe and that it was proper for her to attempt to obtain a warrant.



HARRIS LAW FIRM
PC

35. Were it not for the customs, policies, and practices of City, Armer would have understood she had not sufficiently investigated the incident fully, and that probable cause did not exist to obtain an arrest warrant.

36. As a direct and legal result of Defendants' acts and omissions, Plaintiffs have suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, loss of earnings, and other pecuniary losses not yet ascertained.

## SECOND CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress

(Against all Defendants)

37. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth herein.

38. As stated previously, Defendants failed to properly and thoroughly investigate the claims made against Mr. McNutt regarding Jane Doe.

39. Defendants failed to properly contact the parties involved, understand the entirety of the circumstances, and gain clarity regarding the interaction and relationship between Mr. McNutt and Jane Doe.

40. Defendants' acts and omissions to act were so outrageous because of the gravity of their consequences regarding Mr. McNutt's liberty and Plaintiffs' existence since that initial day. Those consequences led Mr. McNutt to lose his liberty and freedom. They caused Plaintiffs to be subject to months of unwarranted litigation, remanded to prison, and once in prison, subject to heinous and awful circumstances.

41. Defendants knew and intended that their lack of investigation would cause Mr. McNutt to be violated and subject him to the terrible conditions of prison, keep Plaintiffs separated from each other, and subject Plaintiffs to more than 3 years of mental distress and anxiety from being wrongfully arrested and detained. Ms. Dement was not only separated from her husband, but she had her daughter wrongfully taken from her custody and placed into foster care for almost 2 years.



42.     As a direct and legal result of Defendants' acts and omissions, Plaintiffs have suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, loss of earnings, and other pecuniary losses not yet ascertained.

**THIRD CLAIM FOR RELIEF**

Negligence

(Against all Defendants)

43.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.     Defendants, as public servants and a public entity, owed a duty to Plaintiffs to act with reasonable care when handling the investigation of the claims against Mr. McNutt.

45.     Defendants breached that duty by not sufficiently investigating the claims that gave rise to Mr. McNutt's arrest and violation of his parole. Defendants failed to fully comprehend and understand the circumstances and relationship between Mr. McNutt and Jane Doe. A reasonable person, similarly situated in Defendants' shoes, would have exhausted all avenues of investigation prior to obtaining an arrest warrant which Defendants knew would result in Mr. McNutt returning to prison. Upon seeing that Jane Doe was severely autistic, a reasonable person would have made sure they understood and investigated the normal and usual care for an autistic child and if Mr. McNutt's behavior matched that care. Defendants did no such thing and, instead, hurriedly obtained an arrest warrant and began the terrible, traumatic saga that was Plaintiffs' existence for over 3 years.

46.     Ms. Dement had to suffer with the loss of her husband while he was incarcerated as well as the forcible removal of her daughter, Jane Doe, for over 2 years. These events cause severe distress and harm to Ms. Dement and were caused by Defendants' negligence in handling the investigation against Mr. McNutt.



47. As a direct and legal result of Defendants' acts and omissions, Plaintiffs has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, loss of earnings, and other pecuniary losses not yet ascertained.

### FOURTH CLAIM FOR RELIEF

Negligent Infliction of Emotional Distress

(Against all Defendants)

48. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 47 of this Complaint with the same force and effect as if fully set forth herein.

49. As stated above, Defendants acted negligently in regard to Plaintiffs and the circumstances that gave rise to this action.

50. Defendants' negligent behavior was the direct and proximate cause of Plaintiffs' emotional and mental distress that has plagued Plaintiffs for more than 3 years.

51. Plaintiffs continued to suffer the repercussions of Defendants' behavior as Jane Doe has regressed in her development and this has placed added anxiety, stress, and turmoil to their delicate family balance. The damage to Plaintiffs' household, especially because it includes a person with severe autism, cannot be overstated and the extent of which is still unable to be determined.

52. Plaintiffs' damages include, but are not limited to, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fee, costs of suit, loss of earnings, and other pecuniary losses.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

A. For compensatory damages in an amount to be determined at trial;

B. For punitive damages against individual Defendants in an amount to be proven at trial;



COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

C.  For reasonable costs of this suit and attorneys' fees;  and

D.  For such further relief as the Court may deem just, proper, and appropriate.

Dated:  September 3, 2021                                    HARRIS LAW FIRM, PC


                                                            /s/ Justin D. Harris, Esq.
                                                            JUSTIN D. HARRIS, Esq.,
                                                            Attorneys for Plaintiffs

## DEMAND  FOR JURY  TRIAL

Plaintiffs hereby demand a trial by jury.



**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Dated: September 3, 2021                                 **HARRIS LAW FIRM, PC**

                                                        /s/ Justin D. Harris, Esq.
                                                        JUSTIN D. HARRIS, Esq.,
                                                        Attorneys for Plaintiffs


HARRIS LAW FIRM
PC

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**